IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

GILBERT T. PRUITT, an Incompetent
and BARRY GARRETT, as Son and
Next Friend,

    PLAINTIFFS,

v.                                                        No. 06-2867

C.D. "BUDDY" LEWIS, Individually
and in his official capacity as Sheriff of
Tipton County, Tennessee; J.T. "PONCHO"
CHUMLEY, in his official capacity as
Sheriff of Tipton County, Tennessee;
TIPTON COUNTY, TENNESSEE, a
subdivision of the State of Tennessee;
TIPTON COUNTY SHERIFF DEPARTMENT
and UNKNOWN DEPUTY JAILERS of the
Sheriff Department of Tipton County,
Tennessee,

    DEFENDANTS.

___

ORDER GRANTING DEFENDANT C.D. BUDDY LEWIS'S
MOTION FOR SUMMARY JUDGMENT
___

The Plaintiff, Gilbert T. Pruitt, through his son and next friend Barry Garrett, brought the instant action against former Sheriff C.D. "Buddy" Lewis, in his individual and official capacity, Sheriff J.T. "Poncho" Chumley, in his official capacity, Tipton County, Tennessee, the Tipton County Sheriff's Department, and unknown deputy jailers pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 12101, claiming violations of the Eighth and Fourteenth Amendments of the United States

Constitution, the Americans with Disabilities Act ("ADA"), and state law.[1]  Before the Court is the motion for summary judgment of Defendant C.D. "Buddy" Lewis.  (Doc. No. 38.)  The Plaintiffs have responded and this motion is now appropriate for disposition.  For the reasons set forth below, the Defendant's motion is GRANTED.

## BACKGROUND

The Plaintiffs have alleged the following in their Complaint.  On August 2, 2005, Pruitt pled guilty to a charge of driving under the influence ("DUI") and was sentenced to serve 180 days in the Tipton County, Tennessee jail.  (Doc. No. 1, Compl. ¶¶ 15, 17.)  Pruitt began serving his sentence on August 30, 2005.  (Id. ¶ 19.)  His physical and mental health began to worsen as a result of the jail staff not providing him his "regular medications."  (Id. ¶ 20.)  On October 21, 2005, Pruitt was transferred to the Tennessee Western Mental Health Institute ("WMHI") "for involuntary emergency diagnosis evaluation and treatment" pursuant to a state court order.  (Id. ¶ 21.)  The state judge ordered Pruitt's commitment to WMHI "based on certificates of two (2) health professionals who determined that [Pruitt] suffered from a mental illness or serious emotional disturbance, and that due to this mental illness, . . . Pruitt posed a substantial likelihood of serious harm to himself or to others."  (Id. ¶ 22.)  The Plaintiffs allege that Pruitt was admitted to WMHI and the Baptist Hospital-Tipton on at least two other occasions during his stay at the jail for the treatment of his medical condition.  (Doc. No. 44, Pls.' Mem. in Opp., at 1-2.)

According to the Complaint, on December 21, 2005, Garrett, a resident of Memphis, Tennessee, received a telephone call from an unidentified deputy of the Tipton County Sheriff's

---

[1] The Court has previously dismissed all claims against the unknown jailers, the Tipton County Sheriff's Department, and Defendants Lewis and Chumley in their official capacity.  Thus, the only remaining defendants are Tipton County and Lewis in his individual capacity.

2

Department advising him that Pruitt was to be released from the jail within minutes based upon an ex parte order issued that same day by the Circuit Court of Tipton County. (Doc. No. 1, Compl. ¶¶ 25-26.) Garrett requested that the Sheriff's Department keep Pruitt there until he could travel from Memphis to secure his father. (Id. ¶ 27.) Notwithstanding his request, the Defendants released Pruitt about one hour and forty-five minutes after Garrett was notified of his impending release. (Doc. No. 44 Ex. C, Inter-Department Memo.) Upon arriving at the jail later that same day, Garrett determined that his father was gone, whereupon he and other relatives searched the area for Pruitt. (Doc. No. 1, Compl. ¶ 29.) A missing persons report was filed the next day when efforts to locate Pruitt were unsuccessful. (Id. ¶¶ 29-30.) Pruitt has not been seen since leaving the jail. (Id. ¶ 28.)

In his motion for summary judgment, Defendant Lewis argues that the Eighth Amendment claim against him in his individual capacity should be dismissed because the undisputed evidence shows that he did not act with deliberate indifference to Pruitt's serious medical needs. (Doc. No. 38, Def.'s Mem. in Supp. of Mot. Summ. J., at 3.) The Defendant also contends that the Plaintiffs' Fourteenth Amendment claim must fail because there is no evidence that Pruitt was treated differently than other similarly situated inmates. (Id.) Next, Lewis argues that the Court should dismiss the Plaintiff's ADA claim because the ADA does not provide a cause of action against defendants in their individual capacities. (Id.) Last, the Defendant asserts that the negligence claims brought against him in his individual capacity should be disallowed because he is not a proper party under the applicable Tennessee statute. (Id.)

In support of these arguments, Lewis has attached his own affidavit, wherein he claims that although he was the Sheriff of Tipton County at the time of these incidents, he never had any personal contact with Pruitt while he was incarcerated. (Doc. No. 38, Aff. of C.D. Lewis ¶¶ 2-3.)

3

He further asserts that Pruitt never requested any medical care or treatment from him and that he was not involved in the inmate's release. (Id. ¶¶ 4-5.) Last, Lewis maintains that he was not notified that Pruitt suffered from a mental illness or that he knew of any other facts that should have prevented his release. (Id. ¶¶ 6-7.) The Plaintiffs provide little evidence to rebut the Defendant's affidavit. While they have no proof, the Plaintiffs believe that the state court order releasing Pruitt from jail was entered in response to a motion by the Defendant. (Doc. No. 44, Pls.' Mem. in Opp., at 3.) Thus, the Plaintiffs infer, the Sheriff must have known about Pruitt's mental state. The Plaintiffs also argue that even if the Defendant did not file a motion to release the inmate, the court's release order placed everyone at the jail, including Sheriff Lewis, on notice that "special care must be provided to Plaintiff Pruitt." (Id.) The Plaintiffs further contend that it would be impossible for the Defendant not to know about Pruitt's mental health, given the size of the jail, the number of times Pruitt was taken to WMHI and Baptist-Hospital-Tipton, and the fact that he was kept in segregation because of his medical condition. (Id. at 3-4.)

## STANDARD OF REVIEW

Rule 56 (c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms, Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not

4

rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

A.   EIGHTH AMENDMENT CLAIM

The Supreme Court has held that States and their political subdivisions are required by the Eighth Amendment to "provide medical care for those whom [they are] punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103 (1976). To establish an Eighth Amendment violation based on the failure to provide proper medical care, plaintiffs must show that two requirements have been met. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the "prison official must have a 'sufficiently culpable state of mind.'" Id. (quoting Wilson, 501 U.S. at 298). That "state of mind is one of 'deliberate indifference' to inmate health or safety." Id. (quoting

5

Wilson, 501 U.S. at 301-03). The Defendant does not contest that the alleged deprivation in this case was sufficiently serious. (See Doc. No. 38, Def.'s Mem. in Supp. of Mot. Summ. J., at 5-6 (only analyzing whether or not Lewis was deliberately indifferent).) Thus, the Court shall focus on whether Lewis was deliberately indifferent to Pruitt's health or safety.

"[A] showing of deliberate indifference requires a showing of the official's actual awareness of a substantial risk of serious harm." Brooks v. Celeste, 39 F.3d 125, 128 (6th Cir. 1994) (citation omitted). While an official need not seek "to inflict pain by withholding treatment" in order to be considered deliberately indifferent, Molton v. City of Cleveland, 839 F.2d 240, 243 (6th Cir. 1988), "[m]ere negligence is not sufficient," Hicks v. Frey, 992 F.2d 1450, 1455 (6th Cir. 1993). A supervisor who is not directly involved in acts that allegedly violate the Eighth Amendment

> may be held liable for failure to supervise and control his subordinates upon a showing that the official either *encouraged* the specific incident of misconduct or in some other way *directly* participated in it. At a minimum a plaintiff must show that the official at least *implicitly authorized, approved, or knowingly acquiesced* in the unconstitutional conduct of the offending officers.

Id. (internal quotation marks and citation omitted) (emphasis added). A supervisor's actual awareness of a substantial risk of serious harm can be inferred through circumstantial evidence. See Curry v. Scott, 249 F.3d 493, 506 (6th Cir. 2001) ("[T]o prove that the supervisors actually knew that [a prison guard] presented a substantial risk of harm to inmates, the plaintiffs need not prove . . . that [he] was found to have used excessive force on another inmate, and that prison officials thereafter left [him] free to assault inmates. Plaintiffs only need show that an issue of material fact exists as to whether the supervisory defendants were aware that [the prison guard] posed a risk of substantial injury to the inmates and were deliberately indifferent to that risk."). "It is clear, however, that liability cannot be based solely on the right to control employees." Hicks, 992 F.2d at 1455.

In Hicks, a paraplegic prisoner sued the officer in charge of the jail, contending that the officer was deliberately indifferent towards his medical needs, even though there was no evidence

6

the officer "personally observed the conditions that [the prisoner] complained of and certainly none that he ordered subordinates to deny [the prisoner] the care and treatment required by the Care Plan or his condition." Id. at 1455. The officer did, however, receive daily reports from the medical department concerning the paraplegic prisoner, was aware of the prisoner's complaints, and saw him lying on a regular mattress, which did not permit him to turn and exercise his limbs, in a cell that was not large enough to accommodate his wheelchair. Id. The Sixth Circuit held that "the district court properly submitted the claims against [the officer] to the jury, and properly denied" his motion for judgment notwithstanding the verdict. Id. at 1456. Although the court acknowledged that the defendant had little personal contact with the prisoner, it concluded that a jury reasonably could have inferred from the evidence that further inquiry and action was required of the defendant and that by not acting, the defendant acquiesced in the prisoner's mistreatment. Id. at 1457.

In this case, there is no evidence that Lewis was aware that Pruitt suffered from a mental illness. Unlike the defendant in Hicks, Lewis was not regularly informed of Pruitt's medical condition and may never even have encountered him or have been aware of his presence in the jail. The Plaintiffs ask the Court to infer from the alleged size of the jail that the Defendant must have known about Pruitt and his mental illness, but provide no evidence of the size of the jail or the number of the inmates incarcerated there at the time of Pruitt's release. The Plaintiffs also charge Lewis with knowledge of Pruitt's medical needs based on the state court orders mandating that Pruitt be hospitalized and later released. However, the Plaintiffs do not allege that the Defendant approved of or even knew about the allegedly unconstitutional conduct, namely the unnamed deputy's decision to release Pruitt before his son arrived. In addition, unlike in Curry, there is no evidence that any deputy at the jail had a history of mistreating prisoners about which the Defendant knew or should have known, but was deliberately indifferent. Thus, even if the Sheriff realized how mentally ill Pruitt was, there is no proof before the Court to reflect that he implicitly authorized,

7

approved, or knowingly acquiesced in the purported unconstitutional conduct of the deputy who released the inmate. If the Court held Lewis liable under this set of facts, it would be doing so based solely on his right to control the unnamed deputy who released Pruitt, rather than on Lewis's own deliberate indifference towards the Plaintiff. As the right to control alone is insufficient to impose liability on the Sheriff, the Defendant's motion for summary judgment on the Eighth Amendment claim is granted.

B.     FOURTEENTH AMENDMENT CLAIM

The Fourteenth Amendment provides, in relevant part, that no State shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. Without specifying how, the Complaint alleges that Defendant Lewis "violated [Pruitt's] rights of equal protection under the Fourteenth Amendment . . . ." (Doc. No. 1, Compl. ¶ 34.) In his motion, the Defendant insists that the Plaintiffs must be asserting a "class of one" Fourteenth Amendment claim, because the Complaint does not allege that Pruitt was deprived of a fundamental right or that he was a member of a protected class. (Doc. No. 38, Def.'s Mem. in Supp. of Mot. Summ. J., at 7 & n.1.) In a "class of one" case, a plaintiff must show that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 549 (6th Cir. 2007). Lewis contends that because the Plaintiffs have failed to produce any examples of similarly situated inmates who were treated differently than Pruitt, his Fourteenth Amendment claim must fail. (Doc. No. 38, Def.'s Mem. in Supp. of Mot. Summ. J., at 7.) The Defendant further argues that even if the Plaintiffs could make such a showing, their claim should still be dismissed because he had no involvement in Pruitt's treatment or release. (Id.)

The Plaintiffs raise no legal arguments in response to the Defendant's request for dismissal of the Fourteenth Amendment claim. Instead, the Plaintiffs merely summarize the facts of the case

and assert that "it is a fact question as to Defendant Lewis's involvement with Plaintiff Pruitt and whether further discovery is necessary to resolve this issue." (Doc. No. 44, Pls.' Mem. in Opp., at 6-7.) Because the Plaintiffs do not argue that one of Pruitt's fundamental rights was violated or that he was a member of a suspect class, the Court, like the Defendant, assumes that the Plaintiffs intended to bring a "class of one" claim. See Village of Willowbrook v. Olech, 528 U.S. 562, 565 (2000) (granting "class of one" status where the complaint could "be construed as alleging that the Village intentionally demanded a 33-foot easement as a condition of connecting [a homeowner's] property to the municipal water supply where the Village required only a 15-foot easement from other similarly situated property owners"). The Plaintiffs, however, do not attempt to establish either prong outlined by the Supreme Court in Olech. Id. at 564 ("Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."). Thus, because the Plaintiffs have failed to " make a showing sufficient to establish the existence of an element essential" to their Fourteenth Amendment assertion, Celotex, 477 U.S. at 322, the Court grants the Defendant's motion for summary judgment on this claim.

C.   ADA CLAIM

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The term "public entity" is defined, in relevant part, as "any State or local government." Id. § 12131(1)(A). In his motion for summary judgment, the Defendant argues that the Plaintiffs's ADA claim should be dismissed because a "public official in his individual capacity is not a proper defendant under Title II of the ADA." (Doc. No. 38, Def.'s Mem. in Supp. of Mot. Summ. J., at 8.) The Plaintiffs assert in response that Pruitt "clearly falls under the protection of Americans with Disabilities Act due to his mental condition known to the Tipton County Sheriff and Tipton County

9

Circuit Court Judge." (Doc. No. 44, Pls.' Mem. in Opp., at 7.)  Furthermore, the Plaintiffs contend that this Court should not grant the Defendant's motion because "he is asserting the defense of 'deliberate ignorance' to the plight of Plaintiff Pruitt." (Id. at 7-8.)  Neither of these arguments, however, address the legal question of who can properly be sued under the ADA.

The Sixth Circuit has held that "the ADA does not permit public employees or supervisors to be sued in their individual capacities." Williams v. McLemore, White, Warr, Bailey, No. 05-2678, 2007 WL 1748146, at *6 (6th Cir. June 19, 2007) (citing Sullivan v. River Valley School Dist., 197 F.3d 804, 808 n.1 (6th Cir. 1999); Wathen v. Gen. Elec. Co., 115 F.3d 400, 404-05 & n.6 (6th Cir. 1997)); see also Walker v. Snyder, 213 F.3d 344, 346 (7th Cir. 2000) ("The director and all of the other defendants must have been sued in their official capacities-that is, as proxies for the state, . . . rather than their individual capacities, because the ADA addresses its rules to employers, places of public accommodation, and other organizations, not to the employees or managers of these organizations.") (internal citations omitted), *overruled on other grounds by* Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356 (2001); Alsbrook v. City of Maumelle, 184 F.3d 999, 1004 n.8 (8th Cir. 1999) ("Title II provides disabled individuals redress for discrimination by a "public entity" . . . . That term, as it is defined within the statute, does not include individuals.") (internal citations omitted).  Thus, the only defendant against whom the Plaintiffs' ADA claim can be brought is Tipton County.  The Court, therefore, grants Lewis's motion for summary judgment on the ADA claim brought against him in his individual capacity.

D.   NEGLIGENCE CLAIM

Section 41-4-115(a) of the Tennessee Code Annotated provides that "county legislative bodies alone have the power, and it is their duty, to provide medical attendance upon all prisoners confined in the jail in their respective counties." Tenn. Code. Ann. § 41-4-115(a).  The Complaint charges that Lewis was negligent in performing his "duty to provide medical care for and to protect an individual under [his] care and control pursuant to T.C.A. 41-4-115." (Doc. No. 1, Compl. ¶ 32.)

10

Lewis contends that only Tipton County can be held liable under this statute, not the Sheriff. (Doc. No. 38, Def.'s Mem. in Supp. of Mot. Summ. J., at 9-10.) In response, the Plaintiffs submit that because the Defendant breached a duty towards Pruitt, he is not entitled to qualified immunity. (Doc. No. 44, Pls.' Mem. in Opp., at 8.) The Plaintiffs clearly misapprehend the Defendant's argument, which is that he, in his individual capacity, is not the proper party against whom to bring suit under the Tennessee statute cited by the Complaint. Lewis does not argue that a qualified immunity defense applies to this state-law negligence claim.

A judge of this District has previously held that "Tennessee statutory law imposes upon [the sheriff and his chief jailer], in impressive breadth and detail, a multitude of mandatory duties designed to promote the inmate's welfare. By contrast, Tennessee does not impose upon the sheriff or his jailer any statutory duties directly and immediately related to the medical care of inmates." Willis v. Barksdale, 625 F. Supp. 411, 421 (W.D. Tenn. 1985) (internal footnote omitted). Referring to section 41-4-115(a), the court held that "Tennessee expressly assigns those duties to others," namely county legislative bodies. Id. "Tennessee law, therefore, [does] not require [the sheriff and his chief jailer] to ferret out and address the unique medical needs of each individual prisoner." Id. Likewise, although there are no Tennessee state cases directly on point, it does appear that Tennessee courts agree that the appropriate defendant in claims brought pursuant to section 41-4-115(a) is the county, not the sheriff in his individual capacity. See e.g., Manus v. Sudbury, No. W2003-00447-COA-R3-CV, 2003 WL 22888883, at *4 (Tenn. Ct. App. Dec. 3, 2003) ("By statute, county legislative bodies alone have the power and duty to provide medical care to prisoners confined in their jail."); Chattanooga-Hamilton County Hosp. Auth. v. Bradley County, 66 S.W.3d 888, 891 (Tenn. Ct. App. 2001) ("Tenn. Code. Ann. 41-4-115 requires counties to pay for medical care on prisoners 'confined in the jail in their respective counties'."); see also Moore v. Tennessee, No. 3:03-CV-559, 2006 WL 1408674, at *4 & n.4 (E.D. Tenn. May 22, 2006) (noting that in Tennessee, a sheriff in his official capacity has a responsibility under section 41-4-115 of the

Tennessee Code Annotated to provide medical care). Thus, because the proper defendant is Tipton County, the negligence claim against Defendant Lewis in his individual capacity is dismissed.

CONCLUSION

For the reasons articulated herein, the Court **GRANTS** Defendant Lewis's motion for summary judgment and **DISMISSES** all claims against him in his individual capacity.

**IT IS SO ORDERED** this 28th day of December, 2007.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE