IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

GILBERT T. PRUITT, an Incompetent
and BARRY GARRETT, as Son and
Next Friend,

      PLAINTIFFS,

v.                                    No. 06-2867

C.D. "BUDDY" LEWIS, Individually
and in his official capacity as Sheriff of
Tipton County, Tennessee; J.T. "PONCHO"
CHUMLEY, in his official capacity as
Sheriff of Tipton County, Tennessee;
TIPTON COUNTY, TENNESSEE, a
subdivision of the State of Tennessee;
TIPTON COUNTY SHERIFF DEPARTMENT
and UNKNOWN DEPUTY JAILERS of the
Sheriff Department of Tipton County,
Tennessee,

      DEFENDANTS.

---

## ORDER GRANTING TIPTON COUNTY, TENNESSEE'S
## MOTION FOR SUMMARY JUDGMENT

---

The Plaintiff, Gilbert T. Pruitt, through his son and next friend Barry Garrett, brought the

instant action against former Sheriff C.D. "Buddy" Lewis, in his individual and official capacity,

Sheriff J.T. "Poncho" Chumley, in his official capacity, Tipton County, Tennessee, the Tipton

County Sheriff's Department, and unknown deputy jailers pursuant to 42 U.S.C. § 1983 and 42

U.S.C. § 12101, claiming violations of the Eighth and Fourteenth Amendments of the United States

Constitution, the Americans with Disabilities Act ("ADA"), and state law.[1]  Before the Court is the

motion for summary judgment of Tipton County.  (Doc. No. 47.)  The Plaintiffs have responded and

this motion is now appropriate for disposition.  For the reasons set forth below, the Defendant's

motion is GRANTED.

## BACKGROUND

The following facts are undisputed unless noted.  On August 30, 2005, Pruitt was sentenced

to serve 180 days in the Tipton County, Tennessee jail after pleading guilty to a charge of driving

under the influence.  (Doc No. 47, Def.'s Statement of Facts ¶ 1.)  According to Captain John

Mitchell, the chief jailor of the Tipton County jail, the jail's records reveal that during the intake

process, which includes a booking screening questionnaire and an inmate medical evaluation, Pruitt

asserted that he did not suffer from a mental or emotional problem.  (Id. ¶ 5.)  Captain Mitchell

contends that the jail sought medical care for Pruitt after he exhibited symptoms of alcohol

withdrawal and that he was treated by the Professional Care Services of West Tennessee and the

Tennessee Western Mental Health Institute ("WMHI").  (Id. ¶¶ 6-8.)  The Plaintiffs maintain,

however, that Pruitt suffered from a number of health problems which required medical attention.

(Doc. No. 51, Pls.' Reply to Def.'s Statement of Facts ¶ 7.)  They also dispute Captain Mitchell's

claim that Pruitt received outpatient medical and mental health treatment from the Professional Care

Services of West Tennessee, contending that he was only treated at WMHI and Baptist Hospital-

Tipton.  (Id. ¶ 6.)

---

[1] The Court has previously dismissed all claims against the unknown jailers, the Tipton County Sheriff's Department, and Defendants Lewis and Chumley.  Thus, the only remaining defendant is Tipton County.

It is undisputed that Pruitt was admitted to WMHI on October 22, 2005, and discharged October 31, 2005. (Id. ¶ 8.) WMHI's records reveal that Pruitt was admitted because "he was agitated and uncooperative with outpatient treatment. He was poorly oriented and had significant memory recall deficit for short and long term information. He had episodes of verbal and physical aggression toward staff and judgment was impaired." (Doc. No. 51 Ex. A at 6.) WMHI's examination revealed that his "[a]ffect was labile and mood was depressed. There was no disturbance in thought process or content but he reported some auditory hallucinations. He was in complete denial of illness and judgment was poor." (Id.) While at WMHI, Pruitt was treated for psychotic behavior and alcohol dependence, although the hospital considered Pruitt's psychotic behavior to have been resolved by the time he was released. (Id. at 7.) Furthermore, Pruitt did not meet "commitment criteria of demonstrating a substantial likelihood of danger to self and/or others . . . ." (Id.)

Approximately two weeks later, Pruitt was readmitted to WMHI, because "he was delusional and his mental status had deteriorated . . . . His conversation did not make sense and he was talking on a phone that was not plugged in and was combative with the staff, walking the halls naked and masturbating and [throwing] semen around the room." (Id. at 2.) Upon discharge on November 23, 2005, Pruitt was thought to have "some ongoing risk for future dangerous behavior, potential to abuse substances and noncompliance with medication," but that "continued hospitalization [was] unlikely to alter this ongoing risk." (Id. at 3.) He was referred to Professional Counseling Services, Inc., for follow-up care. (Id.)

Upon his return to the jail, Pruitt was placed in segregation and remained there until his release. (Doc. No. 47, Def.'s Statement of Facts ¶ 15.) On December 21, 2005, the Tipton County

3

Circuit Court ordered Pruitt's release "due to multiple health problems." (Id. ¶¶ 16-17.) Sergeant Martin Ott contacted Pruitt's son, Barry Garrett, at 4:00 p.m. to inform him of the court's order. (Id. ¶ 18.) Ott claims that Pruitt's physical and mental condition began to improve dramatically once he learned of the order of release. (Id. ¶ 19.) Ott further contends that he called Garrett again at 5:00 p.m. to find out why he had not picked up Pruitt yet, although Garrett denies that Ott made a second call to him. (Id. ¶ 20; Doc. No. 51, Pls.' Statement of Fact ¶ 20.) In compliance with Tipton County's custom of having supervisory personnel evaluate the physical and mental needs of inmates scheduled for release, Ott alleges that he closely monitored Pruitt and did not observe "any physical or mental symptoms, conditions, or other indicators . . . that would evidence a need for medical attention." (Doc. No. 47, Def.'s Statement of Facts ¶¶ 21-22.) While waiting for his son to pick him up, Pruitt allegedly repeatedly assured the jail personnel that he had somewhere to go upon his release and did not need to wait for Garrett to pick him up. (Id. ¶ 23.) At 5:45 p.m., Ott released Pruitt from the jail. (Id. ¶ 26.)[2]  The Plaintiffs assert that Garrett arrived at the jail at 6:15 p.m., while the Defendant maintains that Garrett did not arrive until 7:30 p.m. (Doc. No. 51, Pls.' Statement of Fact ¶ 27; Doc. No. 47, Def.'s Statement of Facts ¶27.) Pruitt has not been seen since leaving the jail. (Doc. No. 1, Compl.¶ 31.)

In its motion for summary judgment, the Defendant argues that the Plaintiffs cannot maintain their § 1983 suit against Tipton County because 1) they cannot show that the County violated Pruitt's Eighth Amendment rights; and 2) they cannot trace any alleged Eighth Amendment violation

---

[2] The Plaintiffs claim that the jail's own records prove that Pruitt was released at 4:25 p.m., however, a close reading of Ott's December 28, 2005 Inter-Department Memo reveals that Pruitt was released "from the computer to supervised probation" at 4:25 p.m., but did not physically leave the jail until 5:45 p.m. (Doc. No. 50 Ex. C at 1.)

to a policy of the County. (Doc. No. 47, Def.'s Mem. in Supp. of Mot. Summ. J., at 5-11.) Next, the Defendant insists that the Plaintiffs' Equal Protection claim must fail because they cannot show that the County treated Pruitt differently than others similarly situated. (Id. at 12-13.) The Defendant also avers that the Court should dismiss the Plaintiffs' ADA claim because 1) Pruitt was not a qualified individual with a disability; 2) Pruitt was not deprived of any benefit, program, or service; and 3) the County did not discriminate against Pruitt on the basis of his disability. (Id. at 14-18.) Last, the Defendant asserts that the Plaintiffs' state law negligence claim must be dismissed because the statute the Plaintiffs cited in their Complaint does not create a private cause of action. (Id. at 18.)

### STANDARD OF REVIEW

Rule 56 (c) provides that a

judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms, Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by

a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

ANALYSIS

A.      EIGHTH AMENDMENT CLAIM

The Supreme Court has held that States and their political subdivisions are required by the Eighth Amendment to "provide medical care for those whom [they are] punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103 (1976). However, the Eighth Amendment is only violated when the failure to provide medical care "is tantamount to 'punishment,' and thus courts have imposed liability upon prison officials only where they are 'so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain.'" Perez v. Oakland County, 466 F.3d 416, 423 (6th Cir. 2006) (quoting Horn v. Madison County Fiscal Court, 22 F.3d 653, 660 (6th Cir. 1994)). Eighth Amendment claims alleging deliberate indifference to a serious medical need have an objective and a subjective component. Id. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). To satisfy the subjective component, the "prison official must have a 'sufficiently culpable state of

mind.'" Id. (quoting Wilson, 501 U.S. at 297). That "state of mind is one of 'deliberate indifference' to inmate health or safety." Id. (quoting Wilson, 501 U.S. at 302-03).

While mere negligence will not suffice to establish liability, the official need not have intended his acts or omissions to cause harm or have known that such harm would result. Perez, 466 F.3d at 424. However, the plaintiff must produce evidence that the official perceived facts from which he could have inferred a substantial risk to the prisoner, that he did in fact draw the inference, and that he disregarded the risk. Id. For the purpose of deciding this motion, the Court will assume that the Plaintiffs have established that Sergeant Martin Ott violated Pruitt's Eighth Amendment rights by releasing him and will now address the issue of whether Tipton County can be held liable pursuant to 42 U.S.C. § 1983.

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." Humes v. Gilless, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001) (citation omitted). In order to prevail on such a claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003) (citation omitted).

Local governments such as the City are considered "persons" for purposes of § 1983. Holloway v. Brush, 220 F.3d 767, 772 (6th Cir. 2000). This does not mean, however, that municipalities are "liable for every misdeed of their employees and agents." Alkire v. Irving, 330 F.3d 802, 814-15 (6th Cir. 2003) (quoting Garner v. Memphis Police Dep't, 8 F.3d 358, 363

(6th Cir. 1993)). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Instead, the Supreme Court has held that "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997) (citing Monell, 436 U.S. at 694).  The Sixth Circuit has held that there are four means of proving the existence of a municipality's illegal policy or custom.

> The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005) (citations omitted).

The Plaintiffs argue that Tipton County has a custom or policy of inadequately training its employees to evaluate the physical and mental well-being of inmates scheduled for release.  (Doc. No. 50, Pls.' Mem. in Opp., at 9.)  The County admits that, before inmates are released from the jail, its supervisory personnel are required to determine that they are physically and mentally fit for release.  (Doc. No. 47, Aff. of John Mitchell ¶ 10.)  The Defendant's Policy and Procedure manual states that "inmates shall leave the facility no worse physically, emotionally or psychologically than when they entered."  (Doc. No. 47, Pls.' Resps. to Def.'s First Requests for Admissions No. 5.)

Other than Sergeant Ott's allegedly faulty execution of the Defendant's policy of evaluating the health of soon-to-be-released inmates, the only evidence the Plaintiffs present in support of their argument are the affidavits of John Mitchell, Tipton County's chief jailer, Walter Entrekin, the Tipton County sergeant who was working when Garrett arrived at the jail to pick up his father, and Ott.  According to the Plaintiffs, these affidavits

do not indicate that [Mitchell, Ott, and Entrekin] were ever trained to evaluate the medical condition of an inmate prior to that inmate's release. . . . It was this conscious or deliberate choice by the County to not adequately train its personnel assigned to the task of evaluating the medical needs of an inmate who is about to be released from jail that caused [Ott] to act with reckless indifference to Plaintiff Pruitt's medical needs . . . .

(Doc. No. 50, Pls.' Mem. in Opp., at 9-10.)  However, these affidavits were supplied by Tipton County in support of its motion for summary judgment and they barely, if at all, address the subject of how employees are trained to evaluate the health of soon-to-be-released inmates.  Entrekin's affidavit merely details the events he witnessed surrounding Pruitt's release.  (Doc. No. 47, Aff. of Martin Entrekin). Ott's affidavit acknowledges that Tipton County has a policy requiring its supervisory personnel to evaluate the health of inmates who are to be released and states that he monitored Pruitt and did not observe any physical or mental "symptoms, conditions, or other indicators . . . that would evidence a need for medical attention."  (Doc. No. 47, Aff. of Martin Ott ¶¶ 8-9.)  Similarly, Mitchell's affidavit acknowledges the County's policy, but does not address the subject of how supervisory employees are trained to evaluate the health of inmates.  (See Doc. No. 47, Aff. of John Mitchell.)

Based on the record before the Court, it does not appear that the Plaintiffs deposed Entrekin, Ott, or Mitchell to discover how the County trains its employees to evaluate the health of soon-to-be-released inmates or conducted any discovery on that issue at all.  The Plaintiffs cannot sustain their burden of proving that Sergeant Ott's alleged misconduct results from a policy or custom of inadequate training by pointing out that the evidence produced by the County does not conclusively establish that the training was constitutionally sufficient.  Furthermore, the Plaintiffs admitted in their Responses to the Defendant's First Set of Requests for Admission that Tipton County "had adequate policies and procedures in place during all times."  (Doc. No. 47, Pls.' Resps. to Def.'s

9

First Requests for Admissions No. 5.)  Thus, the Court holds that even if it assumes that Sergeant

Ott himself violated Pruitt's Eighth Amendment rights by releasing him, the Defendant's motion for

summary judgment on the Eighth Amendment claim against the County should be granted because

the Plaintiffs have failed to provide any proof of the existence of an illegal policy or custom of

Tipton County.

B.      FOURTEENTH AMENDMENT CLAIM

        The Fourteenth Amendment provides, in relevant part, that no State shall "deprive any

person of life, liberty, or property, without due process of law; nor deny to any person within its

jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV § 1.  Without specifying

how, the Complaint alleges that the Defendant "violated [Pruitt's] rights of equal protection under

the Fourteenth Amendment . . . ." (Doc. No. 1, Compl. ¶ 34.)  In its motion, the Defendant insists

that the Plaintiffs must be asserting a "class of one" Fourteenth Amendment claim, because the

Complaint does not allege that Pruitt was deprived of a fundamental right or that he was a member

of a protected class.  (Doc. No. 47, Def.'s Mem. in Supp. of Mot. Summ. J., at 12-13 & n.2.)  In a

"class of one" case, a plaintiff must show that he has been intentionally treated differently from

others similarly situated and that there is no rational basis for the difference in treatment.  Ass'n of

Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 549 (6th Cir. 2007).  Tipton County

contends that because the Plaintiffs have failed to produce any examples of similarly situated

inmates who were treated differently than Pruitt or show that any such discriminatory treatment was

not rational, his Fourteenth Amendment claim must fail.  (Doc. No. 47, Def.'s Mem. in Supp. of

Mot. Summ. J., at 13.)  The Defendant further argues that even if the Plaintiffs could make such a

showing, their claim should still be dismissed because the Plaintiffs cannot prove that a policy or

custom of the County was the moving force behind the violation.  (Id.)

        The Plaintiffs raise no legal arguments in response to the Defendant's request for dismissal

of the Fourteenth Amendment claim.  Instead, they merely assert in a conclusory fashion that

"Tipton County violated Plaintiff Pruitt's rights under the Equal Protection Clause . . . ." and summarize the facts of the case. (Doc. No. 50, Pls.' Mem. in Opp., at 10.) Because the Plaintiffs do not argue that one of Pruitt's fundamental rights was violated or that he was a member of a suspect class, the Court, like the Defendant, assumes that the Plaintiffs intended to bring a "class of one" claim. See Village of Willowbrook v. Olech, 528 U.S. 562, 565 (2000) (granting "class of one" status where the complaint could "be construed as alleging that the Village intentionally demanded a 33-foot easement as a condition of connecting [a homeowner's] property to the municipal water supply where the Village required only a 15-foot easement from other similarly situated property owners"). The Plaintiffs, however, do not attempt to establish that Pruitt was intentionally treated differently from others similarly situated or that there was no rational basis for the difference in treatment. See id. at 564 ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."). Thus, because the Plaintiffs have failed to "make a showing sufficient to establish the existence of an element essential" to their Fourteenth Amendment assertion, Celotex, 477 U.S. at 322, the Court grants the Defendant's motion for summary judgment on this claim.

C.      ADA CLAIM

        Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Supreme Court has held that the ADA includes state prisons and prisoners within its coverage. Penn. Dep't of Corrs. v. Yeskey, 524 U.S. 206, 210 (1998) ("The text of the ADA provides no basis for distinguishing [a state prison's] programs, services, and activities from those provided by public entities that are not prisons."). To make out a prima facie case under Title II of the ADA, a plaintiff must establish that (1) he has a disability, (2) he is otherwise qualified, and (3) he is being excluded from participation in, being denied the benefits of, or being subjected to

discrimination under the program solely because of his disability.  <u>Dillery v. City of Sandusky</u>, 398

F.3d 562, 567 (6th Cir. 2005) (citation omitted).  In its motion for summary judgment, the Defendant

argues that the Plaintiffs' ADA claim should be dismissed because they cannot show that Pruitt was

a qualified individual with a disability who was denied any benefit, program, or service or who was

discriminated against based on his disability.  (Doc. No. 47, Pls.' Mem. in Supp. of Mot. for Summ.

J., at 14-17.)    In the context of a state prison, a "benefit, program, or service" may include

recreational activities, medical services, as well as educational and vocational programs.  <u>Yeskey</u>,

524 U.S. at 210.  The Plaintiffs contend that Tipton County deprived him of the benefit of taking

medications and participating  in group therapy, as prescribed by the WMHI.  (Doc. No. 50, Pls.'

Mem. in Opp., at 11.)  It is undisputed that WMHI referred Pruitt to "Professional Counseling

Services, Inc.," for follow-up care, medication management, case management, and A&D

counseling and that he was prescribed certain medications.  (Doc. No. 51 Ex. A at 3, 7-8.)  In

disputing whether the jail followed WMHI's recommendations (Doc. No. 51, Pls.' Reply to Def.'s

Statement of Facts ¶ 6), however, the Plaintiffs fail to provide even a scintilla of evidence to counter

the chief jailer's assertion in his affidavit that Pruitt received the recommended out-patient care,

(Doc. No. 47 Aff. of John Mitchell ¶¶ 5, 7).  Thus, the Plaintiffs have failed to meet their summary

judgment burden under <u>Anderson</u>.  477 U.S. at 252.

Even if true, the Plaintiffs' allegations do not establish a valid claim pursuant to the ADA,

because the ADA is not "violated by a prison's simply failing to attend to the medical needs of its

disabled prisoners." <u>Bryant v. Madigan</u>, 84 F.3d 246, 249 (7th Cir. 1996).  In this case, the Plaintiffs

have provided no evidence that anyone at the jail discriminated against Pruitt by denying him access

to any medical service, program, or activity on the basis of his alleged disability.  Instead, the

Plaintiffs merely rely on allegations that the County's medical treatment was inadequate because they were not equipped to care for a prisoner as mentally ill as Pruitt. (See Doc. No. 50, Pls.' Mem. in Opp., at 12 (stating that "[i]t is clear from the deterioration of Pruitt's condition that the County could not properly care from [sic] him. This treatment was due to the fact that he was disabled and the County's disparate treatment of him[3] which was contrary to the County's stated policy that its inmate's health upon release was at least as good as it was when he entered the jail.").)

The Plaintiffs also argue that Pruitt was deprived of access to a benefit, program, or service when he was kept in segregation, because he was subject to less monitoring by jail employees. (Doc. No. 50, Pls.' Mem. in Opp., at 12.) Mitchell admits that Pruitt was placed in segregation after he returned from WMHI. (Doc. No. 47, Aff. of John Mitchell ¶ 9.) The Plaintiffs present no proof, however, that Pruitt was subject to less monitoring in segregation than he would have been as a member of the general population. Furthermore, the Plaintiffs have not cited to any case that holds that being kept with the general population or being regularly monitored by prison guards is a "benefit, program, or service" under the ADA, nor has the Court found such authority. The Supreme Court has held, however, that administrative segregation, without more, does not violate a prisoner's constitutional rights. Sandin v. Conner, 515 U.S. 472, 480-85 (1995). It appears that the jail's decision to place him in segregation was reasonable, in light of WMHI's conclusion that there was "some ongoing risk for future dangerous behavior." (Doc. No. 51 Ex. A at 3.) Thus, because the Plaintiffs have not established that Tipton County deprived Pruitt of a "benefit, program, or service," the Court grants the Defendant's motion for summary judgment on the ADA claim.

---

[3] The Plaintiffs present no examples of any disparate treatment. (See id.)

D.      NEGLIGENCE CLAIM

Having disposed of the Plaintiffs' claims under federal law, the Court now turns to their state law negligence claim against the Defendant. The exercise by a district court of supplemental, or pendent, jurisdiction over state law claims is governed by title 28 section 1367 of the United States Code, which expressly permits the Court to decline the exercise of jurisdiction when it has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3). Absent any remaining federal claims, the Court, in its sound discretion, hereby dismisses without prejudice the Plaintiffs' claims against the County under state law. See Weeks v. Portage County Executive Offices, 235 F.3d 275, 279-80 (6th Cir. 2000) (stating that a district court's decision to decline to exercise supplemental jurisdiction lies within its sound discretion).

## CONCLUSION

For the reasons articulated herein, the motion of Tipton County, Tennessee, for summary judgment as to the federal claims is GRANTED. The remaining state law claim against this Defendant is also DISMISSED without prejudice.

IT IS SO ORDERED this 7th day of January, 2008.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE